IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Saisah G. Corley, ) | |
| ) | C/A No. 2:19-82-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Charleston County, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On December 3, 2018, Plaintiff Saisah G. Corley filed the within action against her former employer, Defendant Charleston County, in the Court of Common Pleas for the County of Charleston, South Carolina. Plaintiff asserts that she was subjected to race discrimination and a hostile work environment (First Cause of Action) and retaliation (Second Cause of Action), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. Defendant removed the complaint on the basis of federal question jurisdiction on January 10, 2019. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling.

Defendant filed a motion for summary judgment on January 13, 2020. Plaintiff filed a response in opposition on February 17, 2020, to which Defendant filed a reply on March 10, 2020. On April 14, 2020, the Magistrate Judge filed a Report and Recommendation in which he recommended that Defendant's motion for summary judgment be granted. Plaintiff filed objections to the Report and Recommendation on April 28, 2020. Defendant filed a reply to Plaintiff's objections on May 12, 2020.

The Magistrate Judge makes only a recommendation to this court. The recommendation has

no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

## FACTS

Plaintiff is a black female and former Administrative Assistant III for the Charleston County Emergency Medical Services ("EMS"). Plaintiff alleges she was one of three black employees in the office, and that she was considered to be an exemplary employee with no discipline or performance issues. The other two black employees were Peggy Sowers and Pamelia Porcher.

Plaintiff alleges that on January 20, 2017, Rhonda Green, who is white, was hired as Plaintiff's direct supervisor. Plaintiff alleges that Green employed two white individuals, Paula Jacques and Christina McClendon. Plaintiff alleges that on November 7, 2017, she returned from medical leave to find McClendon, a temporary worker, performing Plaintiff's duties and responsibilities. Plaintiff alleges that Green failed and refused to allow Plaintiff to return to her previous duties and responsibilities, and that she received directions from McClendon rather than Green directly. Plaintiff asserts that she was sitting for hours with nothing to do and that her work was taken away from her.

According to Plaintiff, Green treated Jacques, McClendon, and other white employees in the office more favorably than she treated Plaintiff, Sowers, and Porcher. Plaintiff alleges that the white

2

employees had no set schedule, no set lunch break, and no discipline for not being in the office on time. She also alleges that Green and the white employees would order lunch and exclude Plaintiff and the other black employees. Plaintiff states that the white employees were not treated with hostility, not required to perform certain tasks, and not required to report required tasks. Plaintiff contends that she was denied the opportunity for overtime pay, unlike McClendon and Jacques, who were allowed to work overtime.

Plaintiff, along with Sowers and Porcher, complained to management regarding discrimination, differential treatment, and preferential treatment for white employees. In October 2017, Plaintiff, Sowers, and Porcher filed a complaint with the Human Resources Department. Plaintiff alleges that, after she made her complaint, she was notified of performance issues; Green changed her work schedule from 8:45 a.m. to 5:15 p.m. to 8:30 a.m. to 5:00 p.m.; and she discovered her personnel file contained disciplinary content of which she had been unaware. Plaintiff asserts that Green's actions created a hostile work environment that resulted in a constructive discharge.

On April 29, 2018, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SHAC") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and hostile work environment. Plaintiff filed a second Charge of Discrimination on May 17, 2018 wherein she alleged discrimination based on race, hostile work environment, and retaliation. Plaintiff received a right-to-sue letter from the EEOC on September 11, 2018.

## APPLICABLE LAW

A.  Race Discrimination

To establish a prima facie case of racial discrimination in the absence of direct evidence, a plaintiff must show that: (1) she is a member of the protected class; (2) she was qualified for her job

3

and her job performance was satisfactory; (3) her employer took an adverse employment action against her; and (4) other similarly situated employees who are not members of the protected class were treated differently under apparently similar circumstances, or there is some other evidence sufficient to give rise to an inference of unlawful discrimination.  Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004).  An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision resulting in a significant change in benefits. Burlington Indus v. Ellerth, 524 U.S. 742, 761 (1998).  In this case, Plaintiff asserts that she was constructively discharged. A plaintiff asserting constructive discharge "must establish that her working conditions were so intolerable that a reasonable employee would have been compelled to resign."  Evans v. Int'l Paper Co., 936 F.3d 183, 194 (4th Cir. 2019).

B.     Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender or race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Evans v. Int'l Paper Co., 936 F.3d 183, 192 (4th Cir. 2019).  In determining whether

C.     Retaliation

 A plaintiff can prove retaliation by showing: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the employment action.  Coleman v. Maryland Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010).  An adverse employment action in the retaliatory context applies to any materially adverse action in response to an employee engaging in a protected activity that may well might have dissuaded a reasonable

4

worker from making or supporting a charge of discrimination. Williams v. Prince William Cty., 645 F. App'x 243, 245-46 (4th Cir. 2016) (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64, 68 (2006)).

## DISCUSSION

A.      The Report and Recommendation

1.      Race Discrimination. The Magistrate Judge noted that there is no dispute Plaintiff is a member of a protected class. As to Plaintiff's job performance, the Magistrate Judge noted that Defendant had provided no documentation of Plaintiff's purported performance issues during the relevant time period, although Plaintiff did admit in her deposition to walking away from Green on one occasion and slamming a door during a meeting with persons in the Human Resources Department. The Magistrate Judge observed that the director of the Charleston County EMS, David Abrams, found Plaintiff's performance lacking in some areas, but wanted to give Plaintiff a chance to see if she had strengths in other areas. Accordingly, the Magistrate Judge determined that Plaintiff established a genuine issue of fact as to whether her job performance was satisfactory.

Regarding an adverse employment action, the Magistrate Judge found that Plaintiff's primary complaints involved Green's refusal to speak to or interact with her and that Green showed favoritism to white employees. Citing James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004), the Magistrate Judge determined that these incidents are not enough to support a constructive discharge claim.

As to overtime opportunities, the Magistrate Judge found that McClendon was not a proper comparator because she was employed by a temporary employment agency, and not by Defendant. The Magistrate Judge determined that Jacques and Sowers are more appropriately comparable and both worked similar amounts of overtime, despite being of different races. The Magistrate Judge

5

found that the evidence, even considered in the light most favorable to Plaintiff, does not support her contention that she was denied overtime because of her race or that white employees were treated differently with regard to overtime because of their race. The Magistrate Judge determined that Plaintiff failed to show the hiring of a new employee forced Plaintiff to resign. In sum, the Magistrate Judge found insufficient evidence to establish constructive discharge and, consequently, the existence of an adverse employment action.

    Finally, the Magistrate Judge found that Plaintiff had failed to present evidence sufficient to establish a genuine issue of fact regarding the fourth prong of her prima facie case. The Magistrate Judge noted that Plaintiff complained about Green going through her work emails; however, as supervisor, Green had the authority to check Plaintiff's work email account. The Magistrate Judge further observed that, although Plaintiff took issue with Green's failure to speak to her regularly, Plaintiff failed to tie Green's management style to any racial animus. The Magistrate Judge recounted that Plaintiff conceded in her deposition she could not remember Green making any racially insensitive remarks or jokes, or displaying any racial animus toward Plaintiff or anyone else. The Magistrate Judge therefore recommended that Plaintiff's racial discrimination claim should be dismissed.

    2. <u>Hostile Work Environment</u>. The Magistrate Judge observed that Plaintiff complained that she never knew what to expect from Green, that Green refused to talk to her and only communicated through post-it notes, and that she received directions from McClendon rather than Green. As with Plaintiff's constructive discharge claim, the Magistrate Judge found that Green's alleged mannerisms and management style were not enough to support a hostile work environment claim based on race. The Magistrate Judge also found that, even if the court were to find for purposes of summary judgment that Plaintiff's work environment during the relevant time was

6

sufficiently severe and pervasive as to alter her conditions of employment and create an abusive work environment, Plaintiff's claim still fails because Plaintiff has presented no evidence to show that Green's conduct was based on a racial animus. Accordingly, the Magistrate Judge recommended that Plaintiff's hostile work environment claim be dismissed.

   3. <u>Retaliation</u>. The Magistrate Judge noted that it is undisputed Plaintiff engaged in protected activity when she complained to the Human Resources Department regarding Green's conduct. The Magistrate Judge determined, however, that Plaintiff failed to present a genuine issue of material fact that either Green or Abrams ever subjected her to an adverse employment action, or that any causal connection existed between an adverse employment action and the protected activity. The Magistrate Judge noted that Plaintiff claimed Abrams appeared to try to avoid her; however, she also testified in her deposition that he took the alleged actions for reasons other than the protected activity. Citing <u>Aryain v. Wal-Mart Stores Texas LP</u>, 534 F.3d 473, 485 (5th Cir. 2008), the Magistrate Judge observed that simple lack of good manners and petty slights, as alleged regarding Green, do not constitute actionable retaliatory conduct.

   The Magistrate Judge observed that Plaintiff was not dissuaded by Green's behavior, but continued to complain about Green's treatment of her. The Magistrate Judge further determined that, contrary to Plaintiff's contentions, Defendant's change of job description, duties, and responsibilities did not amount to a constructive discharge. The Magistrate Judge recommended that Plaintiff's retaliation claim be dismissed.

B. <u>Plaintiff's Objections</u>

   Plaintiff states that the Magistrate Judge failed to (1) consider any relevant facts that support the Plaintiff's claims for discrimination, harassment, and hostile work environment based on race; and (2) consider the extensive facts regarding Defendant's rationale for the actions taken against

7

Plaintiff or even the extensive testimony provided under oath from Sowers and Porcher who also complained to the Human Resources Department. Plaintiff asserts the Report and Recommendation should be rejected for blatant misrepresentation of facts, failure to consider the facts in a light most favorable to Plaintiff, failure to consider all relevant facts regarding the work environment, failure to consider all testimony, and errors of law. For example, Plaintiff contends the Magistrate Judge failed to consider Plaintiff and Green's cubicles were located next to each other but they did not speak to each other, even though Green regularly participated in conversations with others. Plaintiff reiterates her allegations that Green would not respond to Plaintiff's emails, corresponded with her using sticky notes, showed favoritism to other women in the office, and failed to provide Plaintiff with a clear understand of her job duties. Plaintiff asserts that she had to suffer Green's "ignorance" and overall hostility, which allegedly amplified after Plaintiff made her complaint regarding differential treatment. According to Plaintiff, Green treated the black employees–Plaintiff, Sowers, and Porcher–in a hostile manner, which leads to an inference of racial animus.

To show racial discrimination, Plaintiff testified in her deposition that Green frowned at her, ignored her, and said she was too busy to speak to Plaintiff. ECF No. 25-3, 18-19. However, Plaintiff could not recall Green making jokes, comments, or statements that Plaintiff would consider to be racially offensive or insensitive.

The Fourth Circuit in Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000), addressed facts similar to those in this case. In Hawkins, the plaintiff, Lisa Hawkins, an African-American woman, claimed that she had a strained relationship with her supervisor, Sally Price, that was unlike the relationships between her supervisor and white employees she supervised. Hawkins alleged that Price did not adequately inform Hawkins of her responsibilities and gave Hawkins instructions on scraps of paper. Id. at 277. According to Hawkins, Price criticized her suggestions at meetings and

8

rarely praised her in public. The Fourth Circuit held:

> The thrust of Hawkins' claims is that Price inappropriately criticized and insulted her in various ways. Hawkins accuses Price of such things as regarding her as "not of the caliber" to be a CSC manager, rejecting her input at meetings, making fun of her personality type, and failing to give her a gift at a party. But these sorts of disagreements and misunderstandings are ordinary occurrences in a workplace setting. We decline to impute a racial character to them based simply on Hawkins' conjecture.
>
> Hawkins attempts to frame Price's behavior in racial terms by charging that Price did not subject any of Hawkins' white peers to similarly poor treatment. But Hawkins presents no facts that tend to show this allegedly disparate treatment was due to race rather than Price's admittedly low regard for Hawkins' individual performance. Hawkins has demonstrated that she and Price did not see eye-to-eye. But this showing of a difference of opinion, coupled with Hawkins' conclusory allegations of racism, cannot reasonably support the conclusion that Hawkins' discharge was motivated by racial animus.

Id. at 277.

The court finds that, like the plaintiff in Hawkins, Plaintiff has failed to show Green's poor management style was the result of a racial animus. For the same reasons, the facts also fail to support a claim for constructive discharge. Plaintiff does not establish that her working conditions were so intolerable that a reasonable employee would have been compelled to resign. Plaintiff's objections are without merit.

Plaintiff's racially hostile work environment claim also fails because Plaintiff did not present evidence of intolerable working conditions or racial animus. In her deposition, Plaintiff testified that the work environment became hostile after she returned to work after medical leave in the following manner

> Just coming into work every day, not knowing what to expect, supervisor is not talking, only communicating with Post-In Notes. Basically I'm getting all of my information from Christina McClendon at the time, who was the temp that they hired for my position while I was on medical leave. And just sitting for hours with nothing to do, and witnessing how Pam Porcher was being treated and how my work was just taken away from me. It just seemed like everything was falling apart at work, and

9

nobody was helping.

ECF No. 25-3, 34.

Plaintiff further testified that she heard Green make a statement to another employee that "she can't believe how people went this long working here making all these mistakes," id. at 35, and that Green reported in a meeting with the Human Resources Department that Plaintiff had caused a lot of mistakes that Green had to clean up. Plaintiff contends that Green insinuated to another employee that Plaintiff "didn't know what [she] was doing[.]" Id. at 38. According to Plaintiff, Green gave her and Porcher a negative, dark, energy, like Green did not want to be bothered with them. According to Plaintiff, Green always frowned and seemed impatient, except when other people were around. Id. at 40. Plaintiff also testified that the Human Resources Department generally created a hostile work environment by "ma[king] it as though we were taking everything the wrong way instead of just dealing with the facts that we presented and acting accordingly." Id. at 54.

"Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than 'rude treatment by [coworkers],' Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006), 'callous behavior by [one's] superiors,' Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), or 'a routine difference of opinion and personality conflict with [one's] supervisor,' Hawkins v. PepsiCo, Inc., 203 F.3d 274, 276 (4th Cir. 2000), are not actionable under Title VII." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 316-16 (4th Cir. 2008). The Magistrate Judge correctly found that Green's conduct did not amount to severe conduct sufficient to support a hostile work environment claim. Plaintiff's objections are without merit.

In support of her retaliation cause of action, Plaintiff testified that Green did not provide her with a job description, and she felt like she was being forced out. ECF No. 25-3, 57. Plaintiff testified that after the initial complaint to the Human Resources Department, her relationship with Green "just went downhill, worse." Id. at 58. Plaintiff contended that Abrams avoided her and deflected her complaints. Id. at 58-59. Plaintiff also asserted that Abrams hired Jeannelle Harris as his new assistant, which Plaintiff felt was to replace her job as Administrative Assistant III. Plaintiff also testified that Green retaliated against her by not assigning overtime. ECF No. 25-4, 17. However, Plaintiff also testified that she never requested overtime from Green. Id. at 18.

The court concludes that Plaintiff has not provided evidence an adverse action was taken after her engagement in protected activity. Plaintiff's objections are without merit.

## CONCLUSION

For the reasons stated, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. Defendant's motion for summary judgment (ECF No. 25) is granted.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Charleston, South Carolina

September 15, 2020